*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KARL DARNELL THUES,

Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 344579
Macomb Circuit Court
LC No. 2017-004117-FH

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his conviction by a jury of identity theft, MCL 445.65. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to a term of two years' probation, with the first six months to be served in the Macomb County Jail. We affirm.

## I. BACKGROUND

This case arises from defendant's use of the name, date of birth, and Social Security number of the victim, KK, to establish utility services with DTE Energy. The identity theft was discovered when KK contacted DTE energy to establish utility services for her new home, whereupon she was informed that an account in her name already existed for services at a different location. That existing account was providing utilities for a home on Poplar Avenue in Warren, Michigan, that defendant was renting from GB. KK had never previously set up an account with DTE Energy, had never authorized anyone to create an account in her name, and had never lived on Poplar Avenue. KK also did not know defendant. KK admitted that she had previously had another identity theft problem involving a person named Crystal Cole, who KK suspected might have been involved in the instant identity theft. Cole lived in Grosse Pointe. KK filed a report with DTE Energy and a police report regarding the fraud.

GB owned the Poplar Avenue home, and he identified defendant as his renter at that home. Defendant had signed a lease agreement with GB commencing August 3, 2016, that, in relevant part, required defendant to transfer the utilities into his "own name as soon as possible." Defendant was the only named tenant, and as far as GB knew, nobody else lived with defendant.

Defendant initially paid his rent timely, but he began to fall behind and failed to transfer the utilities into his name. GB eventually "had to file an eviction case against him in court" in September or October of 2016. Defendant paid his back rent and unpaid bills, and he switched the utilities out of GB's name. GB did not receive any subsequent bills from DTE Energy for the Poplar Road address, and defendant was still residing at the home and current on his rent as of the date of trial. GB testified that defendant paid his rent either with PayPal or Western Union. GB explained that DTE Energy did not identify the person to whom the utilities had been transferred.

DTE Energy's records showed that someone had called to set up the account for the Poplar Road address in KK's name on December 16, 2016. Beginning on December 19, 2016, the named payee on the account was KK, and the immediately preceding payee had been GB. The account was transferred out of KK's name on May 22, 2017, around the same date KK filed the police report. In the meantime, DTE Energy had received payments on that account "through some sort of Chase Bank account," for which DTE Energy did not keep specific records. A DTE Energy employee testified that she could not verify who called to set up the account because the recorded phone call was no longer available, but any person setting up an account is required to verify a date of birth and Social Security number.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support a finding that it was defendant who supplied KK's personal identifying information to DTE Energy. We disagree.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gains*, 306 Mich App 289, 296; 856 NW2d 222 (2014). This proof can derive from circumstantial evidence and reasonable inferences, even multiple inferences, arising from that evidence. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); *People v McFarlane*, 325 Mich App 507, 516; 926 NW2d 339 (2018). "Further, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "[A]ll conflicts in the evidence must be resolved in favor of the prosecution." *People v Fletcher*, 260 Mich App 531, 562; 679 NW2d 127 (2004).

The elements of identity theft under MCL 445.65 require that a defendant (1) used another person's personal identifying information, (2) to obtain services, (3) with the intent to defraud. *People v Miller*, 326 Mich App 719, 727-728; 929 NW2d 821 (2019). MCL 445.63 defines "personal identifying information," in part, as "a name, number, or other information that is used for the purpose of identifying a specific person or providing access to a person's financial accounts, including, but not limited to, a person's name, address, . . . [or] social security number[.]" Defendant does not seriously dispute whether an identity theft involving KK's personally identifying information occurred. However, "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Viewing the evidence in the light most favorable to the prosecution, there was sufficient circumstantial evidence for a rational jury to infer that it was defendant who used KK's personal identifying information to obtain services. Notably, the bills for those services were being paid. The trier of fact could reasonably infer that only a person benefitting from those services would have any incentive to make the payments. Similarly, the trier of fact could reasonably infer that only a person benefitting from the services would have any incentive to set up the account in the first place, or have sufficient knowledge of the account to make those payments. Because defendant was the only occupant of the home receiving the services, a strong inference arises that defendant was making the payments and was also the person who set up the account. Furthermore, the account was transferred into KK's name contemporaneously with the resolution of the eviction proceeding to compel defendant to transfer the utility accounts out of GB's name. In light of the other evidence that defendant was continuing to reside at the home and benefit from the utility services, the trier of fact could reasonably infer that the timing was not coincidental.

Again, circumstantial evidence can be sufficient to establish the elements of a crime beyond a reasonable doubt, and can sometimes be stronger than direct evidence. *People v Wolfe*, 440 Mich 508, 526; 441 NW2d 1201 (1992). The evidence introduced in this matter, when considered as a whole, overwhelmingly permits only one reasonable conclusion: that defendant was the person who set up the DTE Energy account under KK's name. The prosecution was not required to affirmatively disprove any hypothetical alternative, no matter how unlikely. See *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995). We therefore reject defendant's argument that the prosecution failed to present sufficient evidence of his identity.

### III. MISTRIAL

Defendant argues that the trial court erred by refusing to grant a mistrial after defense counsel objected to a comment made by the prosecutor during opening argument. Specifically, the prosecutor stated that one of the witnesses would testify that defendant was required to register his address with the state, whereupon counsel objected. We disagree.

"We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion." *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation omitted). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant . . . and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). Furthermore, a mistrial is only appropriate if no other way to remove the prejudice exists. *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). Prosecutorial conduct may warrant a mistrial if the misconduct deprives the defendant of a fair trial. See *People v Aceval*, 282 Mich App 379, 392-393; 764 NW2d 285 (2009). We review claims of prosecutorial misconduct de novo on a case-by-case basis to determine whether the prosecutor's remarks, in context, resulted in the denial of a fair and impartial trial. *People v Abraham*, 256 Mich App 265, 272-273; 662 NW2d 836 (2003).

During opening arguments, the prosecutor made the following statement:

Now, what's important is that you're going to hear Detective Newman indicate that by law the defendant is required to register his address with the State of Michigan, and the—

Defense counsel interjected to object. Outside the presence of the jury, defendant contended that it would "taint the jury" for the prosecutor to "tell the jury that [defendant] is supposed to register with the State because he is a sex offender." Alternatively, even if the prosecutor did not mention sex offender registration,[1] the jury would necessarily infer that defendant was on probation and had been convicted of a prior crime. The parties had stipulated that defendant resided at the Poplar Avenue address. Defendant requested a mistrial and argued that a curative instruction would not cure the prejudice because "there are things that can't be unheard[.]" The trial court agreed with defendant that that there were not "many instances where a citizen would have to register with the State," but disagreed that any significant prejudice had yet occurred. The trial court therefore denied defendant's request for a mistrial. The trial court instructed the jury to "completely disregard[]" the prosecutor's statement that defendant was required to register with the state, and that the statement was "not to be used in any fashion in determining guilt or innocence in this case." The trial court also emphasized to the jury that the comment was not testimony, but rather only a statement by the prosecutor.

Evidence of a defendant's prior conviction may be prejudicial because there is the danger that the jury will misuse the conviction as evidence of the defendant's bad character. *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148; 73 NW2d 708 (2007). "However, not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial." *Griffin*, 235 Mich at 36. Defendants are entitled to fair trials, but not necessarily to perfect trials. *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008). "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

During the trial court's opening instructions to the jury the previous day, it explicitly told the jury that the attorneys' opening statements were not evidence and were "only meant to help you understand how each side views the case." It separately instructed the jury that the attorneys' closing statements were also not evidence, and that the jury "must base your verdict only on the evidence." It further explained that "[e]vidence includes the sworn testimony of witnesses, the exhibits admitted into evidence and anything else I may have instructed you to consider evidence." Thus, by the time the prosecutor made the statement about registration, the jury was aware that the prosecutor's comments were not evidence and should not be treated as evidence. After the trial court instructed the jury to disregard the comment, no further mention of any registration requirement was made. During its closing instructions to the jury, the trial court reminded the jurors that they had "taken an oath to return a true and just verdict based only on the evidence and [the court's] instructions on the law." It then reiterated that the jury "may only consider the evidence that has been properly admitted in this case," and again explained that

---

[1] See the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*.

evidence included testimony, exhibits, and anything the trial court had instructed the jury to consider evidence. It also reiterated that the attorneys' "statements and arguments are not evidence," and neither was their questions to witnesses. It also instructed the jury that it must not consider anything the court had instructed it to disregard, and again told the jury that "you must decide this case based only on the evidence and only on the evidence admitted during this trial."

In short, it is inconceivable that the jury was not amply aware of its duty to disregard the prosecutor's comment and of the importance of following that duty. Defendant contends that the single, brief, unrepeated mention of his registration requirement was so outrageous and devastating that it was beyond "practical and human limitations" to expect the jurors to simply ignore it. See *Bruton v United States*, 391 US 123, 135-136; 88 S Ct 1620; 20 L Ed 2d 476 (1968). We disagree. The remark was not directly inculpatory. Any potential significance given to the remark by the jury in the context of an identity theft case, rather than, for example, another criminal sexual conduct case, would be purely speculative. Importantly, as noted, any prejudice must be evaluated in context. This is not a case that turned on a credibility contest between defendant and other witnesses. Rather, this case turned on drawing reasonable inferences from largely objective and undisputed facts. Those inferences are neither tenuous nor weak. The prosecutor's remark may have rendered defendant's trial less than perfect, but under the circumstances, we cannot conclude that it rendered defendant's trial unfair. See *Miller*, 482 Mich at 559. We do not find the remark to be "too compelling for a jury to ignore even with a limiting instruction." *People v Bruner*, 501 Mich 220, 228; 912 NW2d 514 (2018). The trial court therefore did not abuse its discretion by denying defendant's motion for a mistrial.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher